**Julia DORF, Appellant,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services of the United States, Appellee.**

No. 85–5617.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Monday, June 2, 1986.

Decided July 9, 1986.

Rehearing Denied Sept. 26, 1986.

---

Daniel Martin, Somerville, N.J., for appellant.

Mary G. Courtney, U.S. Atty., Newark, N.J., for appellee.

Before ALDISERT, Chief Judge, and GARTH and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge:

### I.

On November 21, 1968, claimant/appellant Julia Dorf for the first time applied for Social Security disability benefits alleging disability as the result of multiple sclerosis. On July 11, 1969, following a hearing before Administrative Law Judge Lawrence Brown (ALJ), Dorf was denied benefits based on the ALJ's finding that she was not disabled as of March 31, 1965, the date which the ALJ found was the last date on which Dorf met the insured status requirement of the Social Security Act. A.R. 143–150. Upon approval by the Appeals Council on October 22, 1969, the ALJ's decision became the final decision of the Secretary. At that time, Dorf did not seek district court review of the Secretary's denial of benefits.

On October 8, 1976, Dorf re-applied for disability benefits, this time alleging that her disability commenced as of June 30, 1969.[1] Dorf's application was denied initially and upon reconsideration. Dorf then requested a *de novo* hearing before an ALJ. Following that hearing, again before ALJ Brown, Dorf was denied benefits on March 27, 1980. The ALJ found that Dorf's impairments, while sufficiently severe to preclude her from returning to her past relevant work as a clerk typist/girl Friday, nevertheless did not preclude her

---

**1.** Dorf had also applied for disability benefits on February 20, 1970, February 28, 1972, and March 4, 1974. Those applications were denied at various stages of the administrative process on the ground that the ALJ's July 1969 denial of benefits based on the ALJ's finding that Dorf was not disabled as of March 31, 1965, was res judicata.

from performing sedentary work. A.R. 10–18.

Following affirmance of the ALJ's decision by the Appeals Council on September 26, 1980, Dorf sought review of the Secretary's decision in the District Court for the District of New Jersey. On May 5, 1981, the district court remanded the matter to the Secretary in accordance with the district court's ruling in *Santise v. Harris,* 501 F.Supp. 274 (D.N.J.1980), which struck down the medical vocational tables established by the federal regulations as invalid. Dorf's case was subsequently consolidated with the government's appeal of *Santise* to this court. In *Santise v. Schweiker,* 676 F.2d 925 (3d Cir.1982), we reversed the district court's holding that the medical vocational tables were unlawful and remanded Dorf's case to the district court to determine whether the Secretary's denial of benefits was supported by substantial evidence.

On March 7, 1983, the district court held that the Secretary's decision that Dorf was capable of performing sedentary work was not supported by substantial evidence and remanded the matter to the Secretary.

Pursuant to that remand, a hearing was conducted before ALJ Brown. Following that hearing, the ALJ again recommended that Dorf be denied benefits. This time, however, contrary to the finding made by him in 1980, he found that Dorf retained the residual functional capacity to perform her past relevant work. A.R. 373–382. On May 4, 1984, that decision became the final decision of the Secretary.

Dorf once again sought review of the Secretary's decision in federal district court. On July 16, 1985, the District Court of New Jersey affirmed the Secretary's decision. Dorf filed a timely appeal to this court.

## II.

Julia Dorf, now 42 years old, is a high school graduate who has completed one year of college. For two months in 1966, Dorf worked as a nurse's aid. From January 1967 to August 1967, Dorf was em-

ployed as an office relief girl/clerk for Union Carbide. At Union Carbide, Dorf's duties included typing, operating teletype machines and performing other office functions. Dorf testified that she left her position at Union Carbide due to the recurrence of the debilitating symptoms of multiple sclerosis. A.R. 487. After she left Union Carbide, Dorf was bedridden for approximately three months in the fall of 1967. *Id.* In 1968, Dorf again attempted to do clerical work, this time for American Standard Corporation. However, after working only two weeks, Dorf was forced to leave. She claimed to have experienced difficulty walking and due to her disease and the lack of air conditioning she asserted that she was incapable of performing the functions required by her job. A.R. 488–89.

The undisputed medical evidence of record revealed that Dorf suffered from multiple sclerosis. In a series of examinations conducted between 1964 and 1969, Dr. A. Culberson, Dorf's treating physician, recorded the various symptoms Dorf suffered as a result of her condition. The severity of her chronic condition apparently waxed and waned, at times seriously debilitating her, while at other times only minimally affecting her. Dr. Culberson's notes of his January 1966 examination disclosed that Dorf complained of double vision, numbness of the face, right hand and both feet, and loss of balance. In January 1966, Dorf was hospitalized. A.R. 419–420. In March 1967, Dr. Culberson's notes revealed that she suffered from substantially similar symptoms to those she experienced in 1966. A.R. 420.

Subsequent examinations by Dr. Culberson revealed the ups and downs of Dorf's disease. Following her voluntary cessation of work as a relief clerk at Union Carbide, Dorf was again bedridden for a three-month period beginning in September 1967. In December 1967, Dr. Culberson noted that Dorf's health had improved, although she still complained of the same symptoms as before. A.R. 421. In March 1968, Dorf again experienced periods of debilitating numbness from the waist down, but, ac-

cording to Dr. Culberson, her condition improved rapidly. *Id.* In June 1968, Dorf's health again deteriorated, A.R. 422, and in August 1968 Dr. Culberson's notes revealed that Dorf complained that she often felt dizzy and could hardly walk. Dr. Culberson's examination revealed clinical findings consistent with her complaints. A.R. 423.[2] Dr. Culberson's October 1968 notes showed that Dorf continued to tire easily and experience numbness in her left hand and both legs. A.R. 425.

In February 1969, Dr. Culberson reported that while Dorf's condition was relatively stable, Dorf was unsteady on her feet, she tired very easily and she reported that she could barely do her housework. A.R. 425. Dr. Culberson's clinical findings revealed that Dorf continued to suffer from the same ailments she regularly experienced: bilateral optic atrophy, more on the right, decreased pain sensation in the left leg, and unsteadiness upon fine gait testing. *Id.*

In May 1969, Dr. Culberson noted that Dorf could not walk well due to the fact that her legs often gave out due to fatigue. His examination revealed no complaints of numbness, but did show that Dorf could walk normally only if she did so slowly. A.R. 425.

In August 1969, Dr. Culberson advised Dorf that she could do light work, but he did not believe that Dorf could perform housework at the same time.[3] A.R. 431–32. His clinical findings continued to reveal decreased pain sensations in the right arm and leg and unsteady fine gait testing.

Other medical evidence in the record supported Dr. Culberson's reports and Dorf's complaints of the progression of her disease. Dr. John P. Greenberg, a neurologist who began treating Dorf in June 1971 (following the date when Dorf last met the earnings requirements) concluded that on the basis of his review of her medical records, Dorf was disabled and unable to perform any work as of 1968. A.R. 299. In a 1976 examination and report, Dr. Samuel Pollock, a psychiatrist, reported that Dorf had been totally disabled since 1964 as a result of multiple sclerosis and a severe mental disorder. A.R. 300–301.

In his January 30, 1984 opinion, ALJ Brown concluded that Dorf suffered from a severe medical impairment—multiple sclerosis—but that that impairment did not equal or surpass the listings for multiple sclerosis to render her disabled without inquiry into her ability to perform substantial gainful activity. In reaching that conclusion, the ALJ relied on the testimony of the medical advisors, Dr. Irwin Perr and Dr. Harold Somberg, who both stated that Dorf's impairments did not meet the listings for multiple sclerosis. The ALJ found that Dorf was capable of returning to her past relevant work as a clerical worker and that consequently she was not disabled under the Act. A.R. 373–382. As noted earlier, on May 4, 1984, this decision became the final decision of the Secretary.

### III.

In order to establish eligibility for Social Security disability insurance, a claimant has the burden of demonstrating that he is unable to engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

To determine whether a claimant is entitled to disability benefits, the Secretary applies a sequential five-step evaluation process pursuant to 20 C.F.R. § 404.1520. Under that five step analysis, the Secretary determines first whether an individual is

---

**2.** Dr. Culberson's clinical findings showed that Dorf suffered from right optic atrophy, decreased pain sensation in the right upper and lower extremities, slight ataxic left upper extremity, slight ataxic gait, and increased left deep tendon reflexes. A.R. 423.

**3.** At the administrative hearing before the ALJ, Dr. Culberson testified that in his opinion Dorf's disabilities equaled the 1969 listings for multiple sclerosis, thereby rendering her disabled under the Act. A.R. 427.

currently engaged in substantial gainful activity. If the claimant is engaged in substantial gainful activity, he will be found not disabled regardless of the medical findings. 20 C.F.R. § 404.1520(b). If the claimant is found not to be engaged in substantial gainful activity, the Secretary will determine whether the medical evidence indicates that the claimant suffers from a severe impairment. 20 C.F.R. § 404.1520(c). If the Secretary determines that he suffers from a severe impairment, the Secretary will next determine whether the impairment meets or equals a list of impairments in Appendix I of sub-part P of Regulations No. 4 of the Code of Regulations. 20 C.F.R. § 404.1520(d).

If the claimant meets or equals the list of impairments, he will be found disabled. If he does not, the Secretary must determine if the claimant is capable of performing his past relevant work considering his severe impairment. 20 C.F.R. § 404.1520(e). If the Secretary determines that the claimant is not capable of performing his past relevant work, then he must determine whether, considering the claimant's age, education, past work experience and residual functional capacity, he is capable of performing other work which exists in the national economy. 20 C.F.R. § 404.1520(f).

The claimant bears the initial burden of establishing that he is incapable of performing his past relevant work due to a medically determinable physical or mental impairment. *Green v. Schweiker*, 749 F.2d 1066 (3d Cir.1984).

Here, the Secretary determined that Dorf had demonstrated that she suffered from a severe medical impairment, multiple sclerosis, but that such impairment did not preclude her from returning to her past relevant work as a clerical worker. Thus, the Secretary concluded his evaluation at the fourth step.[4]

### IV.

On this appeal, Dorf argues that the Secretary's denial of disability benefits is not supported by substantial evidence.[5] In reviewing a denial of benefits by the Secretary, this court applies the substantial evidence test. Substantial evidence is

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." This oft-cited language is not, however, a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a

---

4. At the third step the ALJ concluded that Dorf's impairment did not meet or equal the listings for multiple sclerosis so as to support a finding of disability based on his evaluation of the medical evidence alone.

There is some ambiguity in the record as to which listings the expert medical witnesses and the ALJ applied: those in effect in 1969, when Dorf alleged her disability commenced, or the 1983 regulations in effect at the time the ALJ rendered his decision. Regardless of which listings the ALJ or the witnesses applied, our conclusion that substantial evidence does not exist to support the Secretary's finding at the *fourth step*, i.e. that Dorf retained the residual functional capacity to perform her past relevant work despite her severe impairment, renders it unnecessary for us to determine which regulations were or should have been applied at the third step.

The regulations the Secretary applied in determining that Dorf was not disabled at the third step are irrelevant to his subsequent determination at the fourth step that Dorf could continue to perform her past relevant work.

5. Dorf has raised two additional issues on this appeal, both of which we hold are without merit.

Dorf claims that she met the listing of impairment for neurotic disorders due to depression and other emotional problems apparently stemming in part from her unhappy first marriage. To alleviate her emotional problems, Dorf was treated by a psychiatrist for nine months. After Dorf exhibited substantial emotional improvement, that treatment was terminated at the mutual consent of Dorf and her doctor. Our review of the record supports the ALJ's conclusion that Dorf's psychological impairments did not meet the listings. Accordingly, we do not consider Dorf's alleged emotional problems on this appeal.

Dorf also contends that the ALJ who presided at all administrative hearings involving Dorf's claims for disability benefits was biased against Dorf. We find no evidence which supports Dorf's conclusory claims of bias.

quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.

*Brewster v. Heckler*, 786 F.2d 581, 584 (3d Cir.1986) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir.1983).

The chief evidentiary dispute before the ALJ revolved around whether Dorf's undisputed case of multiple sclerosis was relatively mild—as characterized by the ALJ—or sufficiently severe as to be disabling—as Dr. Culberson's testimony and notes of his examinations of Dorf and the other relevant medical evidence indicated. It is well-recognized that multiple sclerosis in general, and Dorf's case in particular, is episodic in nature, with the symptoms becoming more and less severe as the disease progressively debilitates the victim. The question before us is whether substantial evidence exists to support the Secretary's conclusion that as of June 30, 1969, the date Dorf last met the earnings requirements, Dorf was incapable, or could be expected to remain incapable, of performing sedentary work for a continuous period of one year or more.

The undisputed evidence indicated that from 1964 to 1969 Dorf experienced recurring periods during which she suffered from disabling symptoms, including numbness of the face, hand and legs, loss of balance, and double vision.[6] For example, according to Dr. Irwin Perr, who testified as a medical advisor on behalf of the Secretary: "[c]ertainly at a given moment in time she has symptoms which were disabl-

ing. And at other times, not." A.R. 495. However, since these debilitating periods often were followed by periods of improvement, the Secretary argues that her disease was not of sufficient severity to render her disabled for the continuous twelve month period required by the Act.

In concluding that Dorf's condition was not disabling, the ALJ placed "great weight" on the opinions of Dr. Harold Somberg, a medical adviser who did not examine Dorf, but who relied upon reports of Dr. Culberson, Dorf's treating physician. A.R. 379–380. In his testimony, Dr. Somberg, an expert on multiple sclerosis, wholly discredited Dorf's complaints of pain, as well as her recitals of the symptoms of her disease.[7] In so doing, Dr. Somberg discredited not only Dorf's testimony, but also the reports of Dr. Culberson, which, he claimed, were based heavily on Dorf's complaints rather than on Dr. Culberson's clinical findings and diagnoses. Although Dr. Somberg testified that he "listens to a patient's complaints" and "evaluat[es] ... that recitation ... in relation to everything else," the ALJ found that Dr. Somberg *"stressed that patients are not reliable in their recitations* as there is a distinction between what is complained of and objective manifestations." (emphasis added.) A.R. 379–380.

■ The ALJ's wholesale discounting of Dorf's complaints based on his reliance on Dr. Somberg's testimony, especially when viewed in light of evidence in the record which *supports* a finding of disability, requires reversal. We have consistently held that it is improper for an ALJ to credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with testimony of the claimant's treating physician. *See, e.g.,*

---

**6.** In addition to the other medical testimony, Dr. Pasquale Carone, a psychiatrist, who examined Dorf in August 1963, concluded that she had incapacitating multiple sclerosis. A.R. 286–87. Brother Colm Candon, a registered nurse, reported that from September 1963 to June 1964 Dorf manifested all of the symptoms of which she now complains, including double vision, numbness, unstable gait, etc. A.R. 140.

**7.** The Secretary argues that Dr. Somberg gave "some credence" to Dorf's complaints of her symptoms. However, our review of Dr. Somberg's testimony, and the ALJ's interpretation of that testimony, clearly shows that Dr. Somberg gave "no" credence to Dorf's recitations of her symptoms.

*Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir.1986); *Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir.1981). Further, we have emphasized that an ALJ may not ignore a claimant's subjective complaints of pain and her reports of other symptoms, *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir.1979), particularly where the claimant registers such complaints not only at the administrative hearing, but also during examinations by her physician, as reflected in his contemporaneous reports and notes. Complaints of pain and disabling conditions made to a physician *before* a claim for disability benefits has been filed, while not necessarily more credible, may nevertheless be entitled to greater weight under Dorf's circumstances.

■ The ALJ and Dr. Somberg stress that Dorf's subjective complaints are distinguishable from, and not supported by, the clinical evidence. In reaching their conclusions, however, both the ALJ and Dr. Somberg improperly ignored Dr. Culberson's reported clinical findings of decreased pain sensation in the legs (thereby supporting Dorf's complaints of numbness), as well as his repeated findings of ataxia, which Dr. Somberg himself stated constituted clinical findings. A.R. 458–459. Dr. Culberson's notes of his numerous examinations of Dorf, which increased in frequency during the years 1968–1969, contain sufficient clinical findings to substantiate Dorf's subjective complaints. The ALJ improperly disregarded this evidence of Dorf's disabling condition.

The ALJ's disregard of Dorf's complaints, especially as reflected in Dr. Culberson's reports and notes, is particularly significant in light of the testimony of the vocational expert, William Mooney. Mooney testified that based on his review of the evidence, it was his opinion that Dorf was capable of performing her past relevant work, provided that the work she performed fell within the sedentary classification. However, Mooney further testified that if the ALJ found that Dorf's testimony *was* credible, then he would necessarily have to find that Dorf was *not* capable of performing her past relevant work. Mooney stated that the numbness in her fingers of which Dorf complained would preclude her from typing. Further, he testified that her "double vision problem would cause ... a disruption in [her] ability to focus and concentrate...." A.R. 465–67. Given that evidence, the ALJ was unjustified in relying on Dr. Somberg's testimony which disregarded Dorf's subjective complaints. That reliance, without more, requires reversal of the ALJ's finding that Dorf was capable of performing her past relevant work.

■ Further, the ALJ improperly resolved credibility disputes against Dorf by assuming that Dorf's claim of a physical disability was undercut by evidence of her personal life. The ALJ discounted Dorf's testimony as follows: "While claimant has implied she left [the Union Carbide] job for physical reasons in August 1967, the undersigned has noted she married her second husband in September 1967." A.R. 380.

The ALJ's mere recital of the fact of Dorf's marriage, without more, has no relevance to the question of whether her physical disabilities forced her to leave her job. The ALJ points to no specific physical demands of marriage which would undermine Dorf's testimony that she was physically incapable of working. On the contrary, while Dorf may have *attempted* to maintain a normal personal life, Dorf's and her mother's testimony indicated that Dorf often was incapable of performing household chores or of taking care of her child. That evidence was ignored by the ALJ.

Our review of the record satisfies us that no substantial evidence supports the ALJ's determination that Dorf retained the residual functional capacity to perform her past relevant work.

## V.

Having held that no substantial evidence supports the Secretary's decision, we also observe that in this long and tortured case, spanning almost 20 years, conflicting con-

clusions have been rendered by the ALJ based on essentially the same facts. In 1980, the ALJ found that Dorf was not disabled based on a review of evidence substantially similar to the evidence presented before us. However, in that opinion, the ALJ concluded at the fourth step that Dorf was *incapable* of performing her *past relevant work*. Nevertheless, he recommended at that time that Dorf be denied benefits because he concluded at the fifth step that Dorf retained the residual functual capacity to perform other sedentary work. A.R. 10–18.

In reviewing that decision, the district court reversed the Secretary, holding that the ALJ's finding that "plaintiff could work at a sedentary level is contradicted by his finding that plaintiff could not return to her former job as a clerk typist-girl Friday, clearly a sedentary job." District Court op. at AA17. In reaching that decision, the district court noted the following:

> In addition, *I note that the ALJ's reliance upon Dr. Culberson for his discrediting of plaintiff's frequent complaints seems misplaced and cannot support his findings.* Dr. Culberson's report states that subsequent to 1965, plaintiff was:
>
>> started on Cortisone and Vitamins with complete recovery. She did well following this with *rare double vision and rare loss of balance until February, 1968,* when following a head cold she developed numbness from the waist down with heaviness in both legs. *Since that time, her condition has had ups and downs, but in general she has deteriorated* so that when last seen on October 25, 1968, she had numbness of both legs and the left hand.

District Court op. at AA18 (emphasis in original).

On remand, the ALJ in the present proceeding now concludes at the fourth step that Dorf *is* capable of performing her past relevant work despite her severe impairment. A.R. 373–382. While our review is necessarily limited to the administrative record before us in this particular episode of Dorf's saga the history of inconsistent and seemingly illogical results bolsters our conclusion that the Secretary's decision must be reversed.

## VI.

Given our conclusion that there is an absence of substantial evidence supporting the Secretary's determination, it would constitute an exercise in futility to require the Secretary to hold still another hearing for the purpose of determining whether, at the fifth step, Dorf has the residual functional capacity to perform other work which exists in the economy. If there is no substantial evidence that Dorf can perform even sedentary work (the least physically demanding category of work, *see* 20 C.F.R. § 404.1567), and the testimony of William Mooney, the vocational expert, was that based on her complaints she could not, nothing would be gained by remanding for a hearing addressed to that issue.

Accordingly, we will reverse the July 16, 1985 order of the district court with the direction that the district court remand to the Secretary, who in turn is to be directed to award benefits to Dorf from the onset date of her claimed disability. *See Brewster,* 786 F.2d at 586.