**Dianna HIPPENSTEEL, Plaintiff,**

**v.**

**SOCIAL SECURITY ADMINISTRATION, Larry G. Massanari, Acting Commissioner of Social Security, Defendant.**

**No. CIV.A.3:CV–00–1652.**

United States District Court,
M.D. Pennsylvania.

Sept. 27, 2001.

as Corpus Proceeding.

Patricia A. Shoap, Shoap Law Offices, Chambersburg, PA, for plaintiff.

Justin Blewitt, U.S. Attorney's Office, Scranton, PA, for defendant.

## MEMORANDUM AND ORDER

CONABOY, District Judge.

Presently before the Court is Magistrate Judge J. Andrew Smyser's Report and Recommendation, (Doc. 17), regarding Plaintiff Dianna M. Hippensteel's appeal of the denial of Social Security Disability benefits, (Doc. 1). The Magistrate Judge recommends denial of Plaintiff's instant appeal. Because Plaintiff has filed objections to the recommended disposition, (Doc. 18), we shall review the matter *de novo*. *See* 28 U.S.C. § 636(b)(1)(C); *Kost v. Kozakiewicz*, 1 F.3d 176, 180 (3d Cir. 1993). After a thorough examination of the record and carefully reviewing the matter *de novo*, we find that the Administrative Law Judge ("ALJ") did not base her decision on substantial evidence. Rather, she based her denial on an incomplete record and did not properly consider evidence in the record. Therefore, we remand the case to the Commissioner with a request for an expedited hearing.

## BACKGROUND

Plaintiff filed an application for disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act") pursuant to 42 U.S.C. §§ 401 *et seq.* Plaintiff first applied for DIB on June 10, 1996, claiming disability resulting from a 1993 automobile accident. The claim was initially denied on September 17, 1996 and again on reconsideration on February 27, 1997. The Plaintiff filed a request for a hearing, and ALJ Reana Sloninger held an initial hearing on April 21, 1998 with supplemental hearings on August 18, 1998 and on March 2, 1999. After considering the impairments of severe bilateral shoulder pain and lumbar disc disease with a herniated nucleus pulposus, the ALJ issued an unfavorable decision on April 7, 1999.

The ALJ made the following findings:

1) The claimant has not engaged in substantial gainful activity since September 10, 1993.

2) The medical evidence established that the claimant has severe impairments of both shoulders and lumbar disc disease and herniated nucleus pulposus, but that she does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart P, Regulation No. 4.

3) The claimant is not entirely credible in regard to her symptoms and the resulting limitations.

4) The claimant is capable of performing less than a full range of light work activity. For the period from September 10, 1993 to May, 1997 the claimant could lift ten pounds frequently and twenty pounds occasionally. She could stand, walk and sit six hours of an eight-hour day, with a need to alternate positions every two hours as occurs during normal breaks. For the period from May, 1997 to the present, the claimant is capable of lifting ten pounds frequently and twenty pounds occasionally. She can stand and walk two hours of an eight-hour day and sit six hours of an eight-hour day, with a need to alternate positions every two hours as occurs during normal breaks. She has the same non-exertional limitations for both time periods. She is unable to operate arm or hand controls with the right upper extremity and is only occasionally able to reach above her shoulder with the right upper extremity. She can do no repetitive work with the right upper extremity, must avoid extreme cold, can occasionally work with vibrating objects with the right upper extremity, can occasionally work with moving, mechanical parts with the right upper extremity and must avoid working in high exposed places. (20 CFR 416.945).

5. The claimant has no past relevant work.

6. The claimant was forty years old at her alleged date of onset and forty-five years old (when ALJ Report written), which is defined as younger. (20 CFR § 416.963).

7. The claimant has a high school education. (20 CFR § 416.964). She can communicate in the English language.

8. The claimant has no transferable work skills.

9. Based on exertional capacity for light work, and the claimant's age, education and work experience, section 416.969 of Regulation No. 16 and Rule 202,21, Table No. 2, Appendix 2, Subpart P, Regulation No. 4 would direct a conclusion of "not disabled."

10. Although the claimant's additional nonexertional limitations do not allow her to perform the full range of light work, using the above-cited rule as a framework for decisionmaking, there are a significant number of jobs in the national economy which she could perform.

11. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the ALJ's decision. (20 CFR § 416.920(f)).

(R. at 23–25). Based on these findings, the ALJ held that Plaintiff was not eligible for supplemental security income under sections 1602 and 1614(a)(3)(A) of the Social Security Act. (R. at 25).

Following the decision, Plaintiff filed an appeal. On March 31, 2000, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

Plaintiff filed her Complaint with this Court on September 18, 2000. (Doc. 1). On January 19, 2001, Defendant filed an answer and a copy of the administrative record. (Doc. 8). A supplemental transcript was filed on May 23, 2001. (Doc. 14). Pursuant to Local Rules 83.40.4 and 83.40.5, Plaintiff filed her brief on April 9, 2001, (Doc. 11), and Defendant filed his brief on June 4, 2001, (Doc. 15). Plaintiff filed a reply brief on June 12, 2001. (Doc. 16).

Magistrate Judge Smyser issued his Report and Recommendation on June 25, 2001. (Doc. 17). Magistrate Judge Smys-

er concluded that the ALJ's decision was supported by substantial evidence. He recommended that the Court deny Plaintiff's appeal and affirm the decision of the Commissioner. (Doc. 17 at 20). Plaintiff filed Objections to the Report and Recommendation, (Doc. 18), and a supportive brief, (Doc. 19), on July 6, 2001.

## DISCUSSION

This Court's review of the Commissioner's final decision is limited to determining whether there is substantial evidence to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hartranft v. Apfel,* 181 F.3d 358, 360 (3d Cir.1999). The Court is "bound by the ALJ's findings of fact if they are supported by substantial evidence in the record." *Plummer v. Apfel,* 186 F.3d 422, 427 (3d Cir.1999). Substantial evidence means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Plummer,* 186 F.3d at 427 (quoting *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir.1995)). Therefore, we will not set aside the Commissioner's final decision if it is supported by substantial evidence, even if we would have reached different factual conclusions. *Hartranft,* 181 F.3d at 360 (*citing Monsour Medical Center v. Heckler,* 806 F.2d 1185, 1190–91 (3d Cir.1986)); 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive ...").

The Commissioner is required to use a five-step analysis to determine whether a claimant is disabled.[1] It is necessary for the Commissioner to ascertain: 1) whether the applicant is engaged in a substantial activity; 2) whether the applicant is severely impaired; 3) whether the impairments matches or is equal to the requirements of one of the listed impairments, whereby he qualifies for benefits without further inquiry; 4) whether the claimant can perform his past work; 5) whether the claimant's impairment together with his age, education, and past work experience also precludes him from doing any other sort of work. 20 C.F.R. §§ 416.920(a)-(f); *See Sullivan v. Zebley,* 493 U.S. 521, 110 S.Ct. 885, 888–89, 107 L.Ed.2d 967 (1990). If at any point during the sequential five-step analysis it is determined that the claimant is not disabled then the claim will not be reviewed any further. 20 C.F.R. § 416.920(a).

In this case, the Magistrate Judge found Plaintiff not disabled at Step 5. (R. at 22–23). He found that there are a significant number of jobs in the national economy that Plaintiff could perform. (*Id.*).

In her objections to the Magistrate Judge's Report and Recommendation, Plaintiff claims that the ALJ's and Magistrate Judge's determination that she was not disabled and could perform competitive work which exists in significant numbers in the national economy was in error. (Doc.

---

1. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or with has lasted or can be expected to last for a continuous period of not less that 12 months ...." 42 Y.S.C. § 423(d)(1)(A). The Act further provides that an individual is disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate are in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A).

19). Plaintiff asserts three bases for objection: 1) the omission of a significant part of the hearing transcript warrants a remand; 2) the ALJ's failure to consider Plaintiff's mental impairment warrants a remand; and 3) the ALJ erred in failing to apply the "treating physician rule" when she ascribed greater weight to the opinions of a non-treating non-examining source than to those of Plaintiff's treating physician. (Doc. 11 at 9; Doc. 18; Doc. 19 at 8).

At the outset of our review of whether the ALJ has met the substantial evidence standard in this case, we note that the Third Circuit has repeatedly emphasized the special nature of proceedings for disability benefits. *See Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir.1979). These proceedings are not strictly adversarial, but rather the Social Security Administration provides an applicant with assistance to prove his claim. *Id.* "These proceedings are extremely important to the claimants, who are in real need in most instances and who claim not charity but that which is rightfully due as provided for in Chapter 7, Subchapter II, of the Social Security Act." *Hess v. Secretary of Health, Education and Welfare,* 497 F.2d 837, 840 (3d Cir.1974). As such, the agency must take extra care in developing an administrative record and in explicitly weighing all evidence. 606 F.2d at 406. Further, the Court in *Dobrowolsky* noted "the cases demonstrate that, consistent with the legislative purpose, courts have mandated that leniency be shown in establishing the claimant's disability, and that the Secretary's responsibility to rebut it be strictly construed." *Id.* Finally, the Third Circuit has recognized that it is necessary for the Secretary to analyze all evidence. If he has not done so and has not sufficiently explained the weight he has given to all probative exhibits, "to say that his decision is supported by substantial evidence approaches an abdication of the court's duty

to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Id.*

## I.

■ Plaintiff's first objection raises the issue of whether the omission of a portion of the hearing transcript warrants a remand. The Magistrate Judge did not find that the omission warranted a remand. We find that because of the potential extent and substantive content of the omission in this case, the ALJ did not base her decision on substantial evidence as required by regulatory and caselaw. Therefore, we remand the case to the Secretary with the direction to hold expedited hearings consistent with this opinion.

Plaintiff argues that an apparent 30-minute gap in the hearing tape exists between pages 308 and 309 of the transcript. (Doc. 19 at 9.) The alleged existence and duration of this gap is based on the assertion that page 308 ends with the ALJ questioning the Plaintiff regarding medical impairments, while page 309 begins in the middle of Plaintiff's attorney questioning Plaintiff about daily activities. Plaintiff also asserts that the indication on the bottom of page 308 that the tape is changed to tape two is significant because the transcript does not contain an indication that the tape was changed to side two of tape one, as is the normal course at Social Security hearings. (*See, e.g.,* R. at 356). Plaintiff concludes that the transcript appears to include the first sides of tapes one and two, but omits the second side of tape one. (Doc. 19 at 9).

Plaintiff also made this assertion in her brief in support of her appeal. (Doc. 11 at 10). Following that submission, the Commissioner requested an audit of the tape and subsequently filed what is purported to be a true and correct transcription.

Both parties agree that there is no difference between the two transcriptions. (Doc. 19 at 9; Doc. 15 at 7). However, while the Defendant asserts that the second certified transcription indicates the validity of the transcript, (Doc. 15 at 7), Plaintiff maintains that both transcripts have a material omission, (Doc. 19 at 10).

Magistrate Judge Smyser noted that a review of the transcript gave rise to a "compelling inference of a substantial omission of testimony that is not addressed satisfactorily by the Commissioner." (Doc. 17 at 12). The Magistrate Judge concluded that, although this was troublesome, it did not necessitate a remand because the Plaintiff did not show prejudice because of the omission. (*Id.* at 12–13).

Plaintiff argues that the absence of a full record for review constitutes prejudice *per se* and that it is the Commissioner's burden to provide a complete record for review by the Court. (Doc. 19 at 10). In support of this argument Plaintiff cites *Pratts v. Chater,* 94 F.3d 34 (2d Cir.1996) and *Mullen v. Secretary of Health and Human Services,* 878 F.Supp. 682, (D.Del. 1995). In *Pratts,* a portion of medical testimony was not transcribed. 94 F.3d at 37. The court noted that the ALJ referred extensively to the medical evidence and agreed with the doctor's conclusions. *Id.* Finding it surprising that the Appeals Council did not remedy the problem by granting a new hearing, the court also reasoned that, without the benefit of a complete transcript, the bases of the ALJ's conclusions were lost to the ALJ, the Appeals Council, the district court and the court of appeals. *Id.* at 38. The transcript omission was a significant reason that the *Pratts* court concluded that "the ALJ did not, and indeed could not, decide Pratts's claim with the benefit of a complete and accurate record." *Id.* Therefore, the court held that the denial of disability benefits was not supported by substantial evidence. *Id.*

In *Mullen,* the court found good cause for remand when three minutes of a twelve minute hearing were not transcribed because of inaudibility. This omission of one-quarter of the hearing constituted the testimony of the plaintiff's wife. 878 F.Supp. at 683.

The Third Circuit has consistently found that the ALJ must consider all evidence before him, and indicate evidence he rejects and why. *Burnett v. Commissioner of Social Security Administration,* 220 F.3d 112, 122 (3d Cir.2000); *Plummer v. Apfel,* 186 F.3d 422, 429 (3d Cir.1999); *Doak v. Heckler,* 790 F.2d 26, 29 (3d Cir. 1986); *Cotter v. Harris,* 642 F.2d 700, 705 (3d Cir.1981). This includes non-medical evidence. 220 F.3d at 121. In *Burnett,* the ALJ rejected the plaintiff's testimony regarding the extent of her pain because he found it was not supported by objective medical evidence. The ALJ disregarded supporting testimony because it added nothing substantive. The court found that the ALJ erred in failing to address this testimony and on remand must do so. 220 F.3d at 121.

In this case, we conclude that the transcript indicates a significant omission of Plaintiff's testimony. At the bottom of page 308, the ALJ is questioning Plaintiff about her medical problems; at the top of 309, following a notation of tape change, the ALJ is commenting to Plaintiff's attorney about his questioning of the Plaintiff about her daily activities. (R. at 308–09). Where in other instances the transcript notes speaker change, no notation is made when the ALJ questioning of Plaintiff ended and attorney questioning began. (*See* R. at 291, 301, 306). We cannot know precisely how much of the hearing was not transcribed. However, because the entire

transcription covered one full tape and part of one side of a second tape, the apparent failure to transcribe side two of tape one would represent an omission of more than one-third of the hearing testimony.

The omission in this case is more than the omission of one-quarter of the testimony in *Mullen* that was held to be good cause for remand. As in *Burnett,* here the ALJ referred to the credibility of Plaintiff's testimony, both about her pain and daily activities, in her finding that Plaintiff was not entitled to benefits. (R. at 20–22). Like the omission of the medical testimony in *Pratts,* here the omission of a significant portion of Plaintiff's testimony leaves us unable to properly assess the ALJ's decision. Consistent with previous Third Circuit decisions, we cannot say that the decision is based on substantial evidence where we do not know that the ALJ has analyzed all evidence. *See Dobrowolsky,* 606 F.2d at 407.

Furthermore, because we must strictly construe the agency's responsibility to develop an administrative record and explicitly weigh all evidence, we find persuasive Plaintiff's argument that the missing testimony itself establishes prejudice. While the omission of testimonial evidence may not be cause for remand in all cases, where the omission is to the potential extent of over one-third of Plaintiff's testimony as it is in the instant case, it is cause for remand and a new hearing.

## II.

Plaintiff's second objection raises the issue of whether the ALJ erred in not considering Plaintiff's mental impairment. The Magistrate Judge did not find error in the ALJ's treatment of a possible mental health impairment. We conclude that, given the cumulative effect of the issues raised by Plaintiff's objections in this case,

on remand the ALJ should consider Plaintiff's mental impairment.

Plaintiff argues that the record indicates evidence of a mental impairment and the ALJ should have confirmed Plaintiff's agreement with her attorney's waiver of the issue. (Doc. 19 at 11–12). Although Plaintiff's prior counsel waived her right to have the mental impairment considered by the ALJ, the basis of the waiver is not clear and Plaintiff now contends that she did not intend to waive the issue. (*Id.*). In support of this argument, Plaintiff cites *Diabo v. Secretary of Health, Education and Welfare,* 627 F.2d 278 (D.C.Cir.1980).

Defendant argues that Plaintiff's attorney did not complain of a medically-documented mental impairment. (Doc. 15 at 11). When the ALJ asked the attorney about such an impairment, the attorney said they were not making a claim based on mental impairment. (*Id.*). Defendant also asserts that Plaintiff did not submit evidence that she had a severe mental impairment and that it was her burden to do so, citing *Adorno v. Shalala,* 40 F.3d 43, 46 (3d Cir.1994). (Doc. 15 at 12). Defendant also asserts that the record does not reveal any significant mental impairment, that Plaintiff responded positively to treatment, that she did not complain of any significant mental limitations in the hearing, and that the medical expert did not identify significant mental limitations.

■ While we have reviewed the general framework within which a disability benefits case is to be decided and reviewed, we must now look specifically at the ALJ's duty to develop evidence. *See supra* pp. 387. First, we note the court's direction in *Hess:* "Although the burden is upon the claimant to prove his disability, due regard for the beneficent purposes of the legislation requires that a more tolerant standard be used in this administrative proceeding

than is applicable in a typical suit in a court of record where the adversary system prevails." 497 F.2d at 839–40. While an administrative law judge need not search out all relevant evidence that might be available, the ALJ must inquire fully into the matters at issue. 20 C.F.R. § 404.927; 497 F.2d at 840. The *Hess* court stated that the ALJ's responsibility to develop facts and secure current evaluations may at times be met by simply advising the claimant of the importance of the information. 497 F.2d at 840.

▮ Also, the ALJ "must consider the *combined effect of multiple impairments*, regardless of their severity." *Burnett v. Commissioner of Social Security Administration*, 220 F.3d 112, 122 (3d Cir.2000). Even where an ALJ did consider the combined effects of a plaintiff's impairments, if the ALJ failed to consider all pertinent evidence, the ruling is brought into question and, on remand, the ALJ must properly consider all evidence. *Burnett*, 220 F.3d at 122. In *Diabo*, the court described the ALJ's duty in determining disability: the duty is to "probe and explore scrupulously all the relevant facts .... The law judge's duty was to consider the cumulative effect of all [plaintiff's] ailments and complaints." 627 F.2d at 281.

The Third Circuit addressed the ALJ's duty regarding a mental impairment in *Plummer v. Apfel*, 186 F.3d 422 (3d Cir. 1999). Although the plaintiff's doctors had not evaluated the effects of the plaintiff's mental impairment on her ability to work, the court found that the ALJ had a "duty to develop the record where there is a suggestion of mental impairment by inquiring into the present status of the impairment and its possible effects on the claimant's ability to work." 186 F.3d at 434. The *Plummer* court noted that this duty could have been satisfied in a number

of ways, including soliciting testimony directly from the claimant. *Id.*

▮ This Court recognizes that in the instant case the ALJ asked for a confirmation that Plaintiff was not alleging a mental impairment and Plaintiff's attorney verified same. (R. at 301).

ALJ: Who has been treating you for psychological—I'm sorry. You're not alleging a mental impairment. Is that correct, Mr. Buckley?

ATTY: That is correct.

(*Id.*). This brief exchange shows that the ALJ recognized a possible psychological impairment and, in the hearing transcript provided, did not explore it beyond the above question. Thus, we must decide if this question and answer satisfy the ALJ's burden as outlined above.

▮ We find that the ALJ had a positive duty to develop evidence. The Third Circuit has repeatedly held that the ALJ has an affirmative obligation to assist the claimant in developing facts. *Plummer*, 186 F.3d at 433–34; *Taybron v. Harris*, 667 F.2d 412, 414–15 (3d Cir.1981); *Kephart v. Richardson*, 505 F.2d 1085, 1090 (3d Cir.1974); *Hess*, 497 F.2d at 840. This affirmative obligation means that the ALJ's duty to inquire is independent of plaintiff's burden. Thus, Defendant's reliance on *Adorno* to support the proposition that the ALJ did not have a duty to inquire as to the mental impairment because it was Plaintiff's burden is not justified. While the extent of the inquiry may vary, we find that where the record reveals evidence of a possible impairment, precedent in our circuit would suggest that the ALJ should at least confirm the attorney's waiver of consideration of this impairment with the claimant, and, as noted in *Hess*, inform the claimant of the importance of the information. Because the ALJ in this case did neither, she did not meet her responsibility of developing evidence.

Defendant's other arguments do not persuade us that Plaintiff's mental health should not be considered on remand. Defendant argues that Plaintiff does not have a significant mental impairment because: 1) the record does not reveal any significant mental impairment; 2) Plaintiff responded positively to treatment; 3) Plaintiff did not complain of any significant mental limitations in the hearing; and 4) the medical expert did not identify significant mental limitations. (Doc. 15 at 11). However, Defendant cannot do in a brief what the ALJ should have done in making her determination: "It is incumbent upon the examiner to make specific findings—the court may not speculate as to his findings." *Kephart,* 505 F.2d at 1089. Here Defendant's brief reviews the mental impairment evidence, speculating as to what the ALJ may have found if she had done so. Defendant asks us to agree with this speculation, but precedent does not allow such a replacement. *Id.* Further, in this case, we cannot know the extent of Plaintiff's discussion of mental health issues or the current status of her treatment and condition because of the deficient hearing transcript.

■ Finally, Defendant's argument that the medical expert ("ME") did not find a significant mental limitation is not dispositive. As noted above, the ALJ's evaluation cannot be replaced—a medical expert's report and testimony are just pieces of evidence to be considered. The ALJ must consider the whole record. 20 C.F.R. § 416.920; *Diabo,* 627 F.2d at 281–82. Where the record reflects a mental impairment, the ALJ must follow the regulations setting forth the procedure for analyzing the impairment. 20 C.F.R. § 416.920a. In this case, Defendant asserts that the medical expert, an orthopedist, did not note significant mental limitation on either a standard form or when asked to consider a

list of symptoms, "nervousness" among the many listed. ( Doc. 15 at 11). These ME observations do not satisfy the regulatory requirements of § 416.920a and, therefore, even if credited to the ALJ, cannot meet the ALJ's responsibility to develop evidence of a mental impairment.

■ We do not hold that a remand is required in every case where consideration of an impairment is waived by claimant's attorney. If taken alone, it may not be a sufficient ground for remand. However, when a remand is required and the record indicates evidence of a possible impairment which the ALJ did not explore in her initial evaluation, on rehearing the ALJ should evaluate the impairment in accordance with regulatory and caselaw.

### III.

Plaintiff's third objection raises the issue of whether the ALJ erred in not applying the "treating physician rule" when she ascribed greater weight to the opinions of a non-treating, non-examining source than those of Plaintiff's treating physician. The Magistrate Judge did not find error in the ALJ's assessment of the medical opinions. For the reasons outlined below, we find that, on the record before us, the ALJ should not have ascribed greater weight to the opinion of the non-treating, non-examining physician.

Plaintiff argues that both regulatory and caselaw require that, in the circumstances of this case, the treating physician's opinions are entitled to controlling weight. (Doc. 19 at 14). Section 416.927(d)(2) provides that if "a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case, we will give it controlling weight." Plaintiff also asserts that the

Third Circuit has consistently held that the opinion of a treating physician must be given greater weight than that of a medical advisor or other non-examining physician if the opinion is supported and not inconsistent with other substantial evidence of record. *Mason v. Shalala*, 994 F.2d 1058 (3d Cir.1993); *Dorf v. Bowen*, 794 F.2d 896 (3d Cir.1986); *Podedworny v. Harris*, 745 F.2d 210 (3d Cir.1984).

Plaintiff asserts that the medical expert, Dr. Joseph Sgarlat, did not have all of Plaintiff's medical records, including the most recent records of surgical procedures and post-operative follow-up. (Doc. 19 at 13). Plaintiff argues that the result was an inaccurate evaluation of Plaintiff's condition and abilities and led the ALJ to impose no restrictions on repetitive work, operating hand or motor controls or overhead reaching with the left arm. (*Id.* at 14). In addition to the ME's failure to consider some information, Plaintiff maintains that there is a conflict between the ME's testimony on August 18, 1998 where he stated there were no abnormal findings concerning the left shoulder, (R. at 343), and his report of August 7, 1998 where he noted that a January 19, 1998 MRI suggested lateral acromial impingement, (R. at 262). (Doc. 19 at 13). Plaintiff asserts that the conflict should have been resolved before the ALJ made her decision. (*Id.*). In contrast to the non-examining, non-treating opinion of the ME, Plaintiff notes that the opinion of her treating physician, Dr. Frank Bryan, is well-supported by medical evidence, including numerous diagnostic studies. (Doc. 19 at 14; Doc. 17 at 3–4). Plaintiff states that Dr. Bryan treated her for more than four years, with

at least twenty appointments. (Doc. 19 at 14).

Finally, Plaintiff maintains that absent the legal error of failing to ascribe controlling weight to the treating physician, the ALJ would have granted her claim. (*Id.* at 15). This argument is based on Plaintiff's assertion that the Vocational Expert stated that if Dr. Bryan's restrictions were applied, Plaintiff would not be capable of full-time, regular employment. (*Id.*).[2]

Defendant argues that the overall weight of the evidence was consistent with the ALJ's determination that Plaintiff could do a wide-range of light work, (R. at 18), similar to what the ME had found, (R. at 263). Defendant asserts that this warranted giving the treating physician's opinion no probative weight pursuant to 20 C.F.R. § 416.927(d)(4) which states that "the more consistent an opinion is with the record as a whole, the more weight we will give that opinion." Defendant's brief cites numerous examples of what he alleges to be support for the ME and ALJ findings. (Doc. 15 at 12–15).

We agree with Plaintiff that the "treating physician rule" is widely accepted in the Third Circuit. In *Dorf*, the court noted "we have consistently held that it is improper for an ALJ to credit the testimony of a consulting physician who has not examined the claimant when such testimony conflicts with testimony of the claimant's treating physician." 794 F.2d at 901. A long line of cases support the rule: "A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially when their opinions reflect expert judgment based on continuing

---

2. The restrictions to which Plaintiff refers are included in her treating physician's capacity assessment. Most significantly, Dr. Bryan stated that Plaintiff could not sit for more that an hour at a time due to her lumbar condi-

tion. (R. at 272.) In contrast, the ALJ found that Plaintiff could sit for six hours of an eight-hour day. (R. at 24). The vocational expert used the ALJ's figures to determine Plaintiff's employability. (R. at 325.)

observation of the patient's condition over a prolonged period of time." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir.2000) (citations omitted). In choosing to reject the treating physician's assessment, an ALJ may not make "speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." 225 F.3d at 317 (citing *Plummer*, 186 F.3d at 429; *Frankenfield v. Bowen*, 861 F.2d 405, 408 (3d Cir.1988)). When confronted with contradictory medical evidence, the ALJ may choose whom to credit, but in these instances there is an acute need for the ALJ to explain the reasoning behind conclusions. *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir.2001). The *Fargnoli* court noted that the appeals court will vacate or remand a case where such an explanation is not present. *Id.*

The regulations regarding medical evidence also direct that the weight given to non-examining sources will depend on the degree to which they provide supporting explanations for their opinions. 20 C.F.R. § 416.927(d)(3). "We will evaluate the degree to which these opinions consider all of the pertinent evidence in your claim, including opinions of treating and other examining sources." *Id.*

██ In this case, the ALJ determined that the non-treating, non-examining physician's opinion deserved greater weight than that of the long-term treating physician, presumably finding it "more consistent with the record as a whole," 20 C.F.R. § 416.927(d)(4). (R. at 17–25). Therefore, we must decide whether the regulations and caselaw cited above support this decision. For the reasons elaborated below, we conclude that the ALJ did not give proper weight to the opinion of the treating physician.

First, we find that the ME's opinion is not more consistent with the record as a whole. Both the ALJ and ME concede that the ME did not review all medical records, significantly the most recent which dealt with two additional surgeries, post-operative follow-up and cervical spine indications. (R. 268–270). Further, in his testimony on August 18, 1998, the ME stated that there were no problems with the left shoulder, (R. at 347), when his own report dated August 7, 1998 noted that a January 19, 1998 MRI suggested lateral acromial impingement, (R. at 262). Similarly, the ME stated that his conclusion was consistent with the physical capacities evaluation completed by another physician on August 17, 1996, and that he found the 1996 evaluation consistent with the record as a whole. (R. at 346.) We find this claimed consistency at odds with the record as a whole because two surgeries and lumbar disc problems succeeded the 1996 evaluation. Thus, to the extent that the ALJ based his findings on the ME's physical capacities evaluation, (R. at 19), and testimony, (R. at 21–22), the reliance is misguided because the evaluation is not based on the record as a whole.

Second, we find that the greater weight given to the non-examining ME is not justified because the ME did not provide either sufficient supporting explanations for his opinion or satisfactory contradictory evidence. As noted above, the regulations and caselaw direct that the weight given a non-examining source will depend on supporting explanations provided, and the ALJ can give greater weight to a non-treating physician only on the basis of contradictory medical evidence. 20 C.F.R. § 416.927; *Morales*, 225 F.3d at 317 (citations omitted). To the extent that the ME based his report and testimony on an incomplete record (as previously illustrated), vague references to the record as a sup-

porting explanation for his opinion cannot be given great weight.

The ME's testimony also reveals that his supporting explanations for finding Plaintiff capable of light activity are speculative. Concerning the lumbar spine condition, he stated that "the condition would have to be reevaluated periodically .... I think that condition could either go either way. It could stabilize in time, it could get worse." (R. at 350). Regarding the right shoulder, he stated "one would expect that the shoulder condition should be quite improved and should remain improved." (R. at 351). However, he later stated that it was too early to know if the April, 1998 right shoulder surgery would be a success and that he really could not give an opinion at that time. (R. at 356). Regarding the May, 1998 left shoulder surgery, without reviewing the medical records on that procedure, he said he would have required objective studies to convince him that it was a necessary operation. (R. at 360). We conclude these are not explanations which warrant giving the opinion of a non-examining source greater weight than the opinion of the long-term treating physician who provided updated evaluations on November 19, 1999 and July 13, 1999. (R. at 272, 281).

██ Furthermore, Plaintiff's testimony cannot be considered contradictory medical evidence. Without such contradictory evidence, a treating physician's opinion cannot be rejected due to the ALJ's credibility judgments. *Morales,* 225 F.3d at 317 (citations omitted). The ALJ found that Plaintiff was generally credible but not to the extent of the limitations she alleged. (R. at 21–24). While this observation may be appropriate, Plaintiff's limited credibility does not provide evidence contradictory to the treating physician's opinion. As the ALJ noted, Plaintiff's treating physician's observed that she may

be a "symptom magnifier." However, the remainder of that sentence reveals that he also stated that he believed there was no question that she had documented evidence of impingement. (R. at 168). This excerpt shows that the treating physician based his recommendations on competent medical evidence, not just on Plaintiff's subjective complaints. Because the treating physician incorporated potential symptom magnification into his diagnoses, Plaintiff's testimony cannot be construed as contradictory to the treating physician's opinion. Thus, Plaintiff's lack of credibility cannot serve as a reason to give greater weight to the non-treating physician.

Moreover, in this case, because the transcript omission deals with Plaintiff's testimony about her symptoms, abilities and daily activities, (R. at 308–09), we cannot say that the ALJ's daily activity assessment and credibility determination are accurate. Thus, on remand, the ALJ should fully consider Plaintiff's current condition and abilities, keeping in mind Third Circuit precedent regarding these issues. The Third Circuit has held that the ALJ must credit the claimant's subjective complaints of pain and reports of other symptoms and they are entitled to great weight, particularly where supported by competent medical evidence. *See Dobrowolsky,* 606 F.2d at 409. Also, sporadic and transitory activities cannot be used to show an ability to engage in substantial gainful activity. *See Fargnoli,* 247 F.3d at 40 n. 5. In her report, the ALJ noted activities in which Plaintiff engaged. The ALJ ascertained this information from two sources: 1) Plaintiff's April, 1998 testimony which predated the May, 1998 shoulder surgery; and 2) Plaintiff's "Daily Activity Questionnaire" dated January 23, 1997 which predated two surgeries. Neither of these sources reflected further degenerative changes of the lumbar spine. (R. at 281,

282). On remand, Plaintiff's abilities which predate significant medical developments should not be used as a basis to deny benefits.[3]

Finally, we find that, as with the mental health issue, Defendant's brief cannot do what the ALJ's report did not. Defendant's brief cites many references to the record as support for the ME and ALJ findings. (Doc. 15 at 13–14). However, explicitly providing reasons for a decision is the ALJ's responsibility. *See Fargnoli,* 247 F.3d at 42 (citations omitted).

Even if we were to consider crediting these references as support, we find many of them troublesome. This is so because many statements are made without regard to the date of the source information. For example, Defendant states that "[p]ost-operatively, she regained strength in her right shoulder," citing the Record at 116 and 172. Both the letter and office note cited relate to Plaintiff's condition in 1995, not her more recent condition which reflects at least four more years of treatment and two additional surgeries. (Doc. 11 at 3–4). Regarding Plaintiff's more recent condition, in November 19, 1998 and July 13, 1999 letters, her treating physician states that she has bilateral limitation in motion and weakness. (R. at 272, 281).

Likewise, many of Defendant's other references to normal or less restrictive physical findings relate to older medical records (1994–1997). Where x-rays of Plaintiff's left shoulder may have been negative in 1996 and 1997, (Doc. 15 at 12–15), in March of 1998 her treating physician noted that she would probably require decompression of both shoulders due to documented impingement: "She may be somewhat of a symptom magnifier, but I

believe that there is no question that she has documented evidence of impingement." (R. at 168). Furthermore, by taking statements from reports or notes out of context, Defendant does not give a full picture of Plaintiff's condition. For example, Defendant states that Plaintiff's "rotator cuffs were in tact in both shoulders," (R. at 225), but Defendant does not note that the rotator cuff statement was preceded by the statement that Plaintiff appeared to have bilateral impingement. (*Id.*).

Defendant also asserts that Plaintiff's daily activities persuasively suggest that she could do a wide-range of light work. (Doc. 15 at 14). Similar to our above analysis of medical evidence, we find that Defendant relied on older information and took statements out of context to support the ALJ's decision. For example, where Defendant found it significant that Plaintiff walked for exercise, in the cited portion of the transcript Plaintiff actually said she tried "to do walking and things like that, . . . . but with the disk in my back and my legs get real weak and go numb and then I got to turn around and go back home . . . ." (R. at 303). We find that conclusions drawn from statements taken out of context are not adequate support for an ALJ's determination of a claimant's abilities.

For the reasons outlined above, we conclude that, on the record before us, the ALJ should not have ascribed greater weight to the opinion of the non-treating, non-examining physician. We do not say that on remand the ALJ must agree with the treating physician. Rather, any determination that gives greater weight to a non-treating, non-examining source must be based on a complete record, timely

3. The ALJ evaluated Plaintiff's capabilities for two different time periods: before and after May, 1997. (R. at 24). Our requirement that the ALJ determine eligibility based on timely information does not preclude the use of pre-May, 1997 information when making the eligibility determination for the earlier time period.

assessments of Plaintiff's condition and abilities, and meet all other guidelines set forth in this opinion.

## IV.

▮ The final issue before the Court is Plaintiff's request for interim benefits in the event of a remand. Having agreed with the ALJ's decision, the Magistrate Judge did not reach this issue. We conclude that this is not one of the rare cases where interim benefits should be awarded.

Plaintiff argues that the transcript omission and the Commissioner's failure to obtain a complete transcript provide good cause for remand under Section 405(g) of the Social Security Act. (Doc. 11 at 11). As support for this argument Plaintiff cites *Mullen*, 878 F.Supp. 682, and *LaBonne v. Heckler*, 574 F.Supp. 1016 (D.Minn.1983). Plaintiff asserts that *LaBonne* found a prima facie case for interim benefits when a claimant was denied a timely answer due to the Commissioner's inability to locate a file. 574 F.Supp. 1016. Plaintiff also maintains that *Mullen* found good cause for remand based on the inaudibility of the hearing tape but denied interim benefits because the Secretary had filed a motion for remand and had agreed to expedite the case.

Defendant argues that no statutory authority empowers the Court to award interim benefits in this case. (Doc. 15 at 7). Defendant acknowledges that Section 423(g) of the Act authorizes interim benefits to those appealing termination of a determination that they are no longer disabled. However, Defendant asserts that this authority does not extend to original entitlement cases, citing *Saltares v. Bowen*, 711 F.Supp. 162, 163 (S.D.N.Y.1989), and *Doughty v. Bowen*, 839 F.2d 644, 646 (10th Cir.1988).

Defendant further concedes that courts are not unanimous in their treatment of interim benefit awards regarding original entitlement cases. (Doc. 15 at 8). Noting that the Third Circuit Court of Appeals has not ruled on this issue, Defendant urges that, in light of the absence of explicit congressional authority, the correct approach is to deny interim benefits in original entitlement cases. (Doc. 15 at 9).

Defendant further argues that even if we were to determine that interim benefits may be available in some original entitlement cases, this is not such a case. *Id.* Defendant maintains that, unlike *LaBonne*, Plaintiff here has not made the requisite showing of dire financial circumstances which makes immediate action imperative. 574 F.Supp. at 1019. Defendant also asserts that his conduct in this case is not so egregious, unreasonable or outrageous as would justify an award of interim benefits. (Doc. 15 at 10).

We agree with Defendant that the Third Circuit Court of Appeals has not ruled on this issue. District courts within the Third Circuit are not in agreement on whether interim benefits are available in original entitlement cases.

First, we do not find that *Mullen* supports Plaintiff's position. This is so because the *Mullen* court found that it was "without authority to order the Secretary to pay interim benefits to Plaintiff in the absence of some explicit statutory authority." 878 F.Supp. at 684.

However, other Third Circuit district courts have recognized the authority to grant interim benefits in original entitlement cases. Two such cases are *Davenport v. Bowen*, 709 F.Supp. 634 (E.D.Pa.1989) and *Mason–Page v. Bowen*, 655 F.Supp. 255 (D.N.J.1987).

*Davenport* granted interim benefits when, due to the loss of the plaintiff's file, the defendant failed to file a timely answer after having been granted two extensions.

709 F.Supp. at 634. In *Davenport,* the Plaintiff showed extreme hardship, and the defendant admitted that its handling of plaintiff's file was the sole cause of the delay to the court and claimant. *Id.* at 635.

In *Mason–Page,* the court granted interim benefits because it found egregious delay after the case was remanded to the Social Security Agency for further review. 655 F.Supp. at 258. The delays included a twelve-month lapse between the district court's remand order and the first post-remand evidentiary hearing, the loss of plaintiff's testimony after that delayed hearing and the unavailability of medical advisors which caused further delay. *Id.* The effect of these delays was a two year delay from the remand order to the ALJ's decision. *Id.* at 259.

We find that the instant case does not present the circumstances of either *Davenport* or *Mason–Page.* This case is distinguishable from *Davenport* because the cause for delay is not solely the transcript omission, Defendant has not repeatedly missed filing deadlines, and Plaintiff has not shown extreme hardship. Likewise, the delay in this case is unlike that in *Mason–Page.* Here the case has not yet been remanded and the loss of testimony was in the original hearing.

For the above reasons, we do not award interim benefits to Plaintiff. However, with this decision we do not decide that interim benefits are never available in original entitlement cases. We agree with the court in *Mason–Page* that there may be cases where "[t]he humane purposes of the benefits program and the unfairness of placing the burden of delay on the party least able to control or afford it support interim relief . . . ." 709 F.Supp. at 635.

*EPILOGUE*

While we fully appreciate the burden of the Social Security Administration, we cannot condone delay in the handling of disability cases. It has been five years since the original filing in this case. Given this length of time, on remand we expect the Secretary to give this case priority treatment.

We are also aware that, in response to remedial legislation, spurious claims can be made for compensation and recovery. However, we cannot let this overcome the reality that the law was meant to help people with special needs. As previously noted, the beneficent purpose of the law requires different standards from the adversarial process. The administrative system in place to implement the law is not intended to put barriers in the way of those who seek help. The agency's task is to assist those who apply for benefits. The agency's processes and policies should lead in the direction of providing this support—even if that means assisting the applicant's counsel.

It is not only harm to the individual we must consider—our society as a whole suffers when we deprive the disabled of their rights and privileges. Ultimately the wrongful denial of life-sustaining benefits to our most vulnerable and infirm citizens disadvantages us all.[4]

We mention this not because we see the denial of a valid claim, but because the issues raised in this case speak of a person claiming to suffer debilitating pain. The Social Security Act has been described as Congress's most intricate law, and the evaluation of pain described as the Act's

4. Jon C. Dubin, *Poverty, Pain and Precedent: The Fifth Circuit's Social Security Jurispru-* *dence,* 25 St. Mary's L.J. 81, 129 (1993).

most difficult issue.[5] In this case, the Plaintiff speaks of the type of pain which we know, and our courts have widely recognized, cannot always be defined, described or confirmed by medical techniques, yet must not be discredited or overlooked. We also know that the type of injuries suffered and their effects are often the most incapacitating.

However, the complexity of the issue does not undermine the fact that this is the kind of case where great care need be taken that all administrative procedures and policies adhere to the principles inherent in the legislation: it is the agency's responsibility to assist the claimant at every step of the process. From the record before us, we cannot see that the agency met this responsibility in the initial entitlement inquiry—we trust it will do so on remand. As noted social security scholar Linda G. Mills has observed, while justice in these cases can be elusive, it must be pursued.[6]

## CONCLUSION

This case is remanded to the Secretary for further proceedings consistent with this opinion. Plaintiff's request for interim benefits is denied.

## ORDER

NOW, this 27th Day of September, 2001 it is hereby ordered that:

1. The Magistrate Judge's Report and Recommendation, (Doc. 17), is not adopted;

2. This case is remanded to the Commissioner for proceedings consistent with the attached Memorandum;

3. The Clerk of Court is directed to close this case;

4. The Clerk of Court is directed to mark the docket accordingly.

---

5. *Id.* at 140–41.

6. Linda G. Mills, *A Calculus for Bias: How Malingering Females and Dependent Housew-* *ives Fare in the Social Security System,* 16 Harv. Women's L.J. 211 (1993).