

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-25-2003

# Myers v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket 02-2747

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Myers v. Comm Social Security" (2003). *2003 Decisions.* Paper 791.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/791

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No:  02-2747

KENNETH MYERS,

Appellant

v.

JO ANNE B. BARNHART, COMMISSIONER
OF SOCIAL SECURITY

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(Civil No. 01-cv-2653)
District Court: Honorable Robert F. Kelly

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 11, 2003

(Filed : February 25, 2003)

Before: ALITO and McKEE, Circuit Judges,
and SCHWARZER, Senior District Judge

OPINION

McKEE, Circuit Judge.

Kenneth J. Myers appeals the district court=s decision affirming the final decision of the Commissioner of Social Security that Myers is not entitled to supplemental security income (ASSI@) under title XVI of the Social Security Act, 42 U.S.C. '' 1381- 1383f. For the reasons that follow, we will affirm.

I.

Myers filed for SSI on December 3, 1993, alleging disability due to scoliosis.  The agency denied his claim initially and upon reconsideration.  After a first hearing was rescheduled so that Myers could obtain representation, Myers and his representative (a paralegal) appeared before an ALJ and submitted additional medical evidence regarding Myers= alleged substance abuse.  On April 9, 1996, the ALJ remanded the case for reconsideration of new evidence.  After reconsideration, the agency denied his claim.

At Myers= request, an ALJ held an administrative hearing on November 19, 1998, at which Myers, now represented by counsel, appeared and testified. A vocational expert also testified.  On July 30, 1999, the ALJ issued a decision in which he found that Myers was not disabled because Myers had the residual functional capacity to perform unskilled medium work, and therefore could return to his past relevant work as a cleaner.

The Appeals Council considered Myers= objections to the ALJ=s decision and found no basis on which to amend the ALJ=s decision.  Accordingly, it denied Myers= request for review.  The ALJ=s decision thus became the final decision of the Commissioner pursuant to 42 U.S.C. ' 405(g).

After exhausting his administrative remedies, Myers filed suit in the district court seeking judicial review of the Commissioner=s final decision.   Following the filing of cross-motions for summary judgment, a Magistrate Judge issued a Report and Recommendation (AR&R@) recommending that the district court grant the Commissioner=s motion for summary judgment and affirm the Commissioner=s final decision.  After considering Myers= objections, the district court adopted the R&R and affirmed the Commissioner=s final decision.   This appeal followed.

II.

Myers, who was fifty-one years old at the time of the ALJ=s decision, is a high-school graduate and worked in the past as a cleaner.  During the relevant time period, Myers was treated at the Philadelphia Center for Osteopathic Medicine (APCOM@).  According to the treatment notes, Myers complained of back pain in December 1993, but stated that he had it for many years.  He was diagnosed with low back pain secondary to scoliosis, and was told to go to an orthopedist for an evaluation.

Myers underwent a consultative examination in March 1994 with Dr. Neil Cutler in connection with his application for SSI.  Myers reported that he smoked one pack of cigarettes a day and drank Scotch whiskey daily.  Upon examination, Dr. Cutler noted that Myers was well-developed, well-nourished, and was in no acute distress.  Dr. Cutler noted that Myers had a thoracoscoliosis extending into the lumbar region with a primary curve to the right, but he was able to get on and off the examining table without problem, could walk across the room without significant difficulty, and did not show any loss of equilibrium.  His reflexes, motor and sensory testing were intact.

In March 1994, Fred Myers, M.D., a state agency doctor, thoroughly reviewed the medical evidence of record and opined that Myers could lift fifty pounds occasionally and twenty-five pounds frequently, could stand for six hours and sit for six hours in an eight hour day, could only occasionally stoop, and had no other limitations.  In August 1995, another state agency physician thoroughly reviewed the record and affirmed this opinion with the added limitations of occasional kneeling and crouching.

Myers did not return to PCOM until April 1994, when he again complained of back pain.  Treatment notes indicate that Myers never followed up with treatment or with an orthopedist.  Myers did report that he needed a cane to walk and he was again diagnosed with scoliosis and given pain medication.

In May 1994, Myers returned and underwent a lumbar x-ray which showed lumbar convexity and rotation to the left.  The x-ray also showed narrowing of the disc space between L4-5 and that his right leg was shorter than his left by 3/16 of an inch.  He was again diagnosed with scoliosis and referred to an orthopedist.

In August 1994, Myers underwent a consultative examination with internist Mark Orlow, M.D.  Myers reported that he had scoliosis which had become worse and that he could not lift more than thirty pounds.  He also reported that he had been using a cane.  Dr. Orlow examined Myers and administered a pulmonary functioning test.  Dr. Orlow noted that Myers= spirograms were within normal limits and showed no restrictive ventilatory defect.  However, Myers did have a marked curvature of his thoracic and lumbar spine and a marked left shoulder drop.  Dr. Orlow diagnosed marked thoracolumbar scoliosis.

Myers presented to PCOM in August 1994 complaining that he experienced loss of motor control in his lower extremities while taking a walk.  Treatment notes indicated that Myers did not follow up with the orthopedist in May 1994.  Myers reported that he was applying for SSI.  Once again Myers was referred to an orthopedist to determine his level of functioning.

Myers returned again in November 1994, and treatment notes indicated that he missed another appointment with the orthopedist.  Myers complained of pain radiating down both legs and requested pain medications.  Upon examination, straight leg raising was positive bilaterally, and Myers= appointment with an orthopedist was rescheduled.

Myers did not return for almost a year, until August 1995.  He then complained of pain and stated that he was out of Ibuprofen.  He was again diagnosed with scoliosis and referred for physical therapy and x-rays.  In November, 1995, Myers returned and reported that he was not going to physical therapy because Ahe could not get to the van.@ Tr. 138.  He was given a prescription for Ultram for pain and told to return in two months.

However, Myers once again failed to return to PCOM for almost a year.  When he finally did return in October 1996, he reported that his pain and stiffness were worse in the morning, but it was usually Acompletely improved@ after he was awake for about one hour.  Tr. 312.  He was told to return to the clinic as needed for pain.

Myers did not return for another year, until October 1997.  He then complained of dizziness and was diagnosed with hypertension.  Myers returned in a week and was diagnosed with controlled hypertension.

Myers was reevaluated by Dr. Cutler in June 1997.  Dr. Cutler noted that Myers

was not using any pain medication, but was walking with a cane.  Upon examination, Dr. Cutler observed a Amoderate scoliotic curvature primary curve to the right with secondary curve at lower thoracic area to the left.@  Tr. 206.  Myers had minimal tenderness along the regions of his spine.  No neurological deficits were noted.  Dr. Cutler reported that Myers Awas able to transfer off the table and walk relatively normally down my hallway corridor without using a cane, which he brought.@  Tr. 206.  He diagnosed Myers with chronic scoliosis.

Myers did not return to PCOM until August 1998.  He then complained of back pain and feeling Alike he was going to pass out.@ Tr. 310.  He admitted that he drank occasionally.  In October 1998, Myers returned to PCOM and stated that he had been in the hospital for detoxification.  His hypertension was well controlled and he was referred to an orthopedist for an evaluation of his scoliosis.

On November 18, 1999, a day before Myers' hearing, B. Williams, D.O., a doctor at PCOM, opined that Myers could lift three pounds frequently and ten pounds occasionally, could stand/walk for one hour; could sit for six hours; had limited ability to push/pull in upper and lower extremities; could only occasionally bend, kneel, stoop, crouch or balance; and had difficulty reaching.

On a disability report, Myers stated that he cooked daily, cleaned now and then, swam, and visited with friends and relatives.  In a 1997 disability report, Myers stated that he was disabled due to mental illness.  At the administrative hearing in November 1998, Myers testified that he had last used crack cocaine in 1998, but, prior to that time, he had an $80 per month habit.  Myers also testified that he does not intend to reenter the workforce.

Myers testified further that, as a cleaner in 1991-92, he primarily mopped floors and sometimes buffed floors.  Myers drew unemployment for a year and a half after he stopped working.  The ALJ asked Myers if he realized that by collecting unemployment payments he has Aholding [himself] out as able to work.@  Tr. 45.  Myers responded, ANo, I didn=t know that.@ Tr. 45.  The ALJ confronted Myers with the fact that he stated on his SSI application that he was not receiving any income while he was receiving SSI.  The ALJ also asked Myers about his statement that he had not worked since 1992.  Myers admitted that he had worked for Pathmark for two months in 1995-96 where he primarily ran a buffer.

Myers testified that he was disabled because he could not lift very much and could not sit or stand very long in one position.  He also stated that he used a cane, but did not have it with him at the hearing.  According to Myers, a doctor had prescribed the cane.

When the ALJ asked Myers why he waited a year between doctors= visits, he replied, AThe only time I went to see my physician is if like my stomach bothered me or when death occurred in my family that upset my stomach.  Other than that I really didn=t go.@  Tr. 65.

The vocational expert testified that Myers= past jobs were both classified as Acleaner@ at the unskilled, medium level.   The ALJ then asked whether Myers could perform his past relevant work with the following limitations: able to life twenty-five pounds frequently and fifty pound occasionally, stand for six hours in an eight hour workday, perform simple tasks, and relate well with supervisors and coworkers.  The vocational expert responded that Myers could perform his past relevant work as a cleaner.

                              III.

Our scope of review is limited to determining if the Commissioner's decision is supported by substantial evidence.  42 U.S.C. ''  405(g), 1383(c)(3); Monsour Medical Ctr. v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).  Substantial evidence refers to that evidence that "a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence."  Ginsberg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971).

                              IV.

The Social Security Act defines disability as an inability to work because of a medically determinable physical or mental impairment expected to result in death or to last at least twelve months.  42 U.S.C. ' 1382c(a)(3)(A); see Heckler v. Campbell, 461 U.S. 458, 459-60 (1983).  The Act further requires that a claimant for disability benefits show that he has physical or mental impairment of such severity that:

he is not only unable to do his previous work, but cannot,
considering his age, education, and work experience, engage
in any other kind of substantial gainful work which exists in
the national economy, regardless of whether such works exists
in the immediate area in which he lives, or whether a specific
job vacancy exists for him, or whether he would be hired if he
applied for work.

42 U.S.C. ' 1382(a)(3)(B).  A five-part sequential process is used to evaluate claims of disability.  20 C. F. R. ' 416.920.  The evaluation process requires the Commissioner to consider, in sequence, whether the claimant: (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work, and (5) if not, whether he or she can perform other work in the national economy.  20 C. F. R. ' 416.920(a).  If a definitive decision can be reached at any stage in the sequential evaluation process, further evaluation is not necessary.  20 C. F. R. ' 416.920(a).

At step four, the ALJ is required to evaluate whether the claimant is able to return to his past work.  20 C.F.R. ' 416.920(a).  At this step, the claimant bears the burden of establishing that he is incapable of performing past relevant work due to a medically determinable physical or mental impairment.  Dorf v. Bowen, 794 F.2d 896, 900 (3d Cir. 1986).  Because Myers did not show that he had a medical condition that made him incapable of performing his past relevant work as a cleaner, the ALJ determined that he was not disabled.  Thus, the ALJ found that Myers was not under a disability at any time through the date of his decision.

We believe that substantial evidence supports the Commissioner=s final determination that Myers retained the residual functional capacity to perform his past relevant work as a cleaner.  That decision was supported by the opinions of two state agency physicians who are experts in the field of social security disability evaluations, Social Security Ruling (SSR) 96-6p; see also 20 C.F.R. ' 416.927(f), and whose opinions are treated as expert opinion evidence.  20 C.F.R. ' 416.927(f)(2)(I); SSR 96- 6p.  The Commissioner=s decision was also supported by the findings of Dr. Cutler, a consultative examiner.

Myers argues that the ALJ improperly accepted the opinions of the two state agency doctors and Dr. Cutler over the opinion of his treating physician, Dr. Williams.  We disagree.  Even if Myers= characterization of Dr. Williams as his treating physician is accepted, it affords only limited support to Myers= claim.  Dr. Williams examined Myers very infrequently and opined that Myers was disabled only one day before Myers= disability hearing.  Dr. Williams= opinion was neither consistent with the other evidence of record, nor well-supported by objective evidence.  Moreover, the two state agency doctors opined that Myers could perform medium work.  Consequently, Dr. Williams= opinion was not persuasive in demonstrating that Myers was incapable of performing a modified range of medium work.  As we have previously held, an ALJ can choose to accept the findings of evaluating, non-examining state agency physicians over the opinions of treating physicians where the treating physicians= opinions were Aconclusory and unsupported by the medical evidence@ and contradictory to other medical evidence of record.  Jones v. Sullivan, 954 F.2d 125, 129 (3d Cir. 1991).

In addition, as we have noted, Dr. Cutler=s findings support the ALJ=s decision. Dr. Cutler evaluated Myers on several occasions and did not find him disabled.  Although Dr. Cutler diagnosed Myers with scoliosis, he noted that Myers was well- developed, well-nourished, and in no acute distress.  Dr. Cutler noted that Myers was able to get off and on the examining table without problems, could walk across the room without significant difficulty, and without any loss of equilibrium.  He also noted that Myers= reflexes, motor and sensory testing were intact.  Finally, Dr. Cutler noted that Myers was not using any pain medication, had minimal tenderness along the regions of his spine and had no neurological deficits.

Myers next argues that the ALJ did not properly assess his subjective complaints of pain or his credibility.  Again, we disagree.  The Social Security regulations provide the authoritative standard for the evaluation of a claimant=s subjective complaints, including pain. Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999).  The regulations governing the evaluation of pain and other subjective complaints provide that a claimant=s

statements about his or her impairments need not always be sufficient to establish disability. 20 C.F.R. ' 416.929(a). Instead, a claimant must first establish a medical impairment which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all other evidence, could lead to a conclusion of disability. 20 C.F.R. ' 416.929(a).

Once this threshold showing is met, the ALJ must then evaluate the intensity and persistence of the symptoms to determine whether they limit the claimant=s capacity to work. 20 C.F.R. ' 416.92(c)(1). Thus, the ALJ is required to assess the degree to which the claimant is accurately stating his or her subjective symptoms or the extent to which they are disabling. Hartranft, 181 F.3d at 362; 20 C.F.R. ' 416.929. Because a claimant=s subjective complaints can sometimes suggest a greater severity of impairment than can be shown by the objective medical evidence, the following factors may be considered in assessing the credibility of a claimant=s statements: (1) daily activities; (2) duration, location, frequency, and intensity of the pain and other symptoms; (3) precipitating and aggravating factors; (4) medication taken to alleviate pair or other symptoms; (5) treatment other than medication; (6) any other measures used to relieve the symptoms; and (7) other factors concerning functional restrictions or limitations due to pain or other symptoms. 20 C.F.R. '' 416.929(c)(3)(i)-(vii). Here, consideration of these additional factors undermines Myers= assessment of the severity of any pain he may have had.

Myers argues that the ALJ did not properly address his credibility because the ALJ based his decision on the fact that Myers collected unemployment benefits and had worked for two months as a cleaner at Pathmark. However, it was entirely proper for the ALJ to consider that Myers= receipt of unemployment benefits was inconsistent with a claim of disability during the same period. See, e.g., Johnson v. Chater, 108 F.3d 178, 180 (8th Cir. 1997) (application for unemployment compensation benefits can adversely affect a claimant=s credibility because of admission of ability to work required for unemployment benefits). Moreover, it is clear that Myers= receipt of unemployment benefits was not the only reason for the ALJ=s credibility assessment. Specifically, the ALJ concluded that Myers was not fully credible because his complaints were Anot corroborated by the objective medical evidence, and [were] belied by the paucity of regular medical treatment and lack of adherence to a regular medical regimen.@ Tr. 23. That finding is clearly supported by the record. After 1994, Myers was only treated approximately once a year at PCOM. Although he was scheduled for an appointment with an orthopedist on approximately six occasions, he never kept the appointments. Clearly, it was reasonable to conclude that this lack of serious commitment to treatment and Myers= refusal to keep his medical appointments was suggestive of Myers= level of pain.

Moreover, the objective medical evidence does not support Myers= subjective complaints of disabling pain. Admittedly, Myers has scoliosis; however, he was treated conservatively. In fact, in 1997, Dr. Cutler noted that Myers was not using any pain medications. Dr. Cutler=s observations also cast doubt upon Myers= credibility. Dr. Cutler noted that Myers walks with a cane Abut seems to have no problem locomoting and does not give evidence of any stiffness or difficulty staying seated during the course of this evaluation which lasts the best part of an hour.@ Tr. 198. In addition, Dr. Cutler observed that Myers Awas able to transfer off the table and walk relatively normally down my hallway corridor without using a cane, which he brought.@ Tr. 206.

Finally, Myers= own admissions cast doubt on his own credibility. Myers told Dr. Orlow that he could lift thirty pounds, but he testified at the hearing that he could only lif fifteen pounds. Treatment notes from October 1996 indicate that Myers reported that although he had stiffness in the morning, it was Acompletely resolved@ within one hour of waking up. Tr. 312. Moreover, Myers worked at Pathmark for two months in 1996 as a cleaner. And, although he testified that he needed a cane, Myers did not bring a cane with him to the hearing.

V.

For all of the above reasons, we find that the Commissioner's final determination that Myers was not disabled and that, within the limitations described, Myers could perform his past relevant work as a cleaner, is supported by substantial evidence in the record. Accordingly, we will affirm the decision of the district court.

TO THE CLERK OF THE COURT:

Please file the foregoing Opinion.


/s/ Theodore A. McKee
Circuit Judge