

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-8-2006

# Krzywoszyja v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4348

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Krzywoszyja v. Comm Social Security" (2006). *2006 Decisions.* Paper 605.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/605

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-4348

———

JOLANTA KRZYWOSZYJA
O/B/O
ANNA KRZYWOSZYJA,

Appellant

v.

COMMISSIONER OF SOCIAL SECURITY

———

APPEAL FROM THE
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY
D.C. Civil No. 03-cv-00119
District Judge:  The Honorable Dennis M. Cavanaugh

———

Submitted Under Third Circuit LAR 34.1(a)
June 28, 2006

Before: BARRY, VAN ANTWERPEN, and SILER*, <u>Circuit Judges</u>.

(Filed August 8, 2006)

———

OPINION OF THE COURT

———

———————

*The Honorable Eugene E. Siler, Jr., Circuit Judge, United States Court of Appeals for
the Sixth Circuit, sitting by designation.

SILER, Circuit Judge

Jolanta Krzywoszyja ("Jolanta"), the surviving daughter of Anna Krzywoszyja ("Anna"), deceased, seeks review of the decision of the Commissioner of Social Security ("Commissioner") denying Anna's application for disability insurance benefits. Anna alleged disability due to high blood pressure, headaches and general pain post-surgery. The administrative law judge ("ALJ") ruled that Anna was not disabled prior to or on the last day of her disability insurance, December 31, 1988, within the meaning of the Act and thus denied her benefits. The district court affirmed. Because substantial evidence supported the ALJ's finding, we also affirm.

I.

From 1965 on, Anna repaired, cleaned and serviced watches, an occupation requiring very little physical exertion. She alleged that she became disabled in 1982 due to right kidney damage, sustained while undergoing a total abdominal hysterectomy. After her surgery, she often complained of pain in the right side of her back and legs and lightheadedness. She had to lie down daily due to intense headaches. Also after the surgery, Anna's blood pressure was "sky high," and her legs and ankles were swollen which imposed difficulty for standing or walking long distances. Anna took over-the-counter medications (such as Excedrin) for headaches and Inderal for high blood pressure. In 1991, Anna collapsed and, while she was in the hospital, doctors discovered a tumor in her left kidney and that her urethra had been

2

sliced. She subsequently underwent dialysis, had a kidney transplant and eventually died in August 1994.

In evaluating Anna's claim for disability benefits, the ALJ stated that notes recorded during Anna's post-operative doctor visits revealed that she was doing well and that her incision was well-healed. Based on these physician's notes and the claimant's own descriptions of her medical condition, the ALJ concluded that the record did not document any condition or complication that could be associated with the surgery performed in 1982. He accordingly concluded that Jolanta's testimony was not corroborated by either the objective evidence or the evidence of record. Because Anna was not impaired to an extent that significantly limited her ability to perform basic work-related activities, she did not have a severe impairment as required for a finding of disability. 20 C.F.R. § 404.1521.

## II.

The reviewing court does not engage in fact finding, so "the findings of the Commissioner [] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). There must be medical evidence to disprove a claimant's testimony as to pain. *Green v. Schweiker,* 749 F.2d 1066, 1070 (3d Cir. 1984). An ALJ must make specific findings when evaluating a claimant's subjective pain. *Hargenrader v. Califano*, 575 F.2d 434 (3d Cir. 1978).

## III.

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment." *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Furthermore,

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).

Pursuant to the regulations, the ALJ engages in a five-step sequential analysis when evaluating whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof on steps one through four; if the claimant establishes her disability according to the first four factors, then the burden shifts to the Commissioner to demonstrate that the claimant is capable of performing other work in the national economy in view of her age, education and work experience. *Morales v. Apfel*, 225 F.3d 310, 315-16 (3d Cir. 2000).

In the present case, the ALJ engaged in the five-step sequential analysis, but concluded that the claimant did not establish a severe impairment as required by step two. The ALJ considered claimant's allegations of pain but was not able to validate those allegations with treatment notes and no symptoms were diagnosed as resulting complications from the hysterectomy surgery.

Although the ALJ must consider subjective evidence of pain and combination of impairments, the final conclusion must be based on specific factual findings in the record.

4

*Green,* 749 F.2d at 1071 ("There must be objective medical evidence of some condition that could reasonably produce pain."). Subjective symptoms of pain can be validated if observed and treated over time by a physician. *Dorf v. Bowen*, 794 F.2d 896, 902 (3d Cir. 1986).

Although Jolanta testified that Anna did not return to her work after surgery in 1982, she failed to show that Anna was not able to return to work. Anna's medical records contradict Jolanta's claims because they show that Anna was discharged in good condition. Jolanta also claims that Anna's blood pressure was "sky high," a claim which directly contradicts Dr. Sheflin's, Anna's treating physician's, notes indicating that Anna's blood pressure was stable post-operatively and was never excessively elevated throughout his time as Anna's physician. Dr. Sheflin noted that Anna was "doing well" and she took over-the-counter pain relievers for her headaches. The ALJ noted "that although Jolanta's testimony chronologically detailed the reasons for her mother's inability to work during the period in question, her testimony is not corroborated by other evidence of record. Such a result is consistent with *Green*, 749 F.2d at 1070.

The ALJ offered the following reasons for rejecting Jolanta's testimony with proper citations to the record:

> The record shows that in May 1981, eighteen months prior to the surgery, the claimant's blood pressure was elevated. On March 30, 1983, the claimant was placed on Inderal, a medication used to treat both hypertension and migraine-type headaches. While the record does not specify what this medication was used for, two months later, on May 3, 1983, her blood pressure was under control, and remained so for the remainder of the period under consideration.

\* \* \*

5

The claimant alleges that she was well until she had the surgery on November 9, 1982. The record repeatedly shows that the claimant did well post-operatively. By November 29, 1982, Dr. Sheflin noted that her incision was healed and on December 6, 1982, he noted that the claimant was "doing well post-op[eratively] and her [vaginal] cuff was also "well healed." On December 27, 1982, her incision was "well healed."

Thereafter, the claimant complained of hot flashes and was placed on hormone replacement therapy. On January 3, 1983, Dr. Sheflin noted that the claimant was "improving only slowly". She was noted to have hemorrhoids and was treated [for] . . . this condition. On January 31, 1983, two and a half months after surgery, Dr. Sheflin again noted that the claimant was "doing well" . . . . On May 23, 1983 he noted that she was "much improved." On June 6, 1983 office notes indicate that the claimant was "doing well;" her blood pressure was normal and she wanted to discontinue medication for the headaches.

The ALJ cited to Anna's medical records when he determined that claimant's allegations were unfounded because Anna's incision was "well healed," her blood pressure was stable at all times after surgery and her alleged intensive headaches did not impair her and were improved by over-the-counter drugs. There were other symptoms that the ALJ considered but the regulation prevents a finding of severe impairment absent a previous medical diagnosis that could reasonably produce such symptoms. 20 C.F.R. § 404.1529(c).

Anna never returned to work. At step two, the impairment is severe if it limits the person's ability to do basic work activities; an impairment is not severe if it is a slight abnormality that has only a minimal effect on the claimant's ability to do basic work activities. 20 C.F.R. § 404.1521; Soc. Sec. Ruling ("SSR") 85-28; *Ferguson v. Schweiker,* 765 F.2d 31, 33 n.2 (3d Cir. 1985). Prior to the last date she was insured for disability insurance, Anna complained of moodiness, tinnitus, hives, swelling of legs and varicosities.

6

The record, however, failed to indicate Anna's doctors ever diagnosed her with an impairment that was likely to cause any of the symptoms she alleged. There was no medical evidence of any significant kidney disease prior to 1991. Finally, Dr. Sheflin did not diagnose Anna with any impairments of a debilitating nature from any time after her surgery until December 1988.

There are no medical records indicating that the slicing of Anna's right urethra caused her kidney disease. Records indicate that Anna's kidney tumor, dialysis and eventual kidney failure caused her death but none of it related back to her urethra. The finding of the sliced urethra was part of the examination process, not part of the diagnosis. SSR 83-20 requires an ALJ to call a medical expert only when a patient's medical records lead to an ambiguous onset date. There are no medical records indicating any symptoms of claimant's kidney disease until 1991.

Since the records did not indicate a diagnosis of any impairments that cause the alleged symptoms, the ALJ found that claimant failed her burden of proof and therefore denied her benefits. There is substantial evidence in the record to support the ALJ's decision.

Jolanta insists that the Commissioner twice lost claimant's records and that this should be weighed heavily against the Commissioner's findings. The record on appeal does contain a note that indicated one of claimant's physicians, Dr. Panotes, had lost her records due to a flood. Anna saw Dr. Panotes beginning in 1982; unfortunately, Dr. Panotes could only produce notes taken from 1988. Counsel offers no reason why the ALJ could not rely on Dr. Sheflin's treatment notes for the same period. If medical evidence in the record does not

refute the treating physician's opinion, the ALJ is bound by it. *Allen v. Bowen*, 881 F.2d 37, 42 (3d Cir. 1989). The ALJ properly relied on Dr. Sheflin's treatment notes and other evidence in the record because no other evidence presented by the claimant refutes Dr. Sheflin's opinion.

Affirmed.